UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

TIMOTHY ROSENCRANTZ,

          Plaintiff,            Case No. 1:24-cv-886

v.                                      Honorable Phillip J. Green

ANGELA SCHMALBACH, et al.,

          Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.13.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

2

28 U.S.C. § 636(c). Because the named Defendant has not yet been served, the undersigned concludes that the Defendant is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way the Defendant is not a party who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

against Defendant Williams. The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims as well as any personal capacity claims for declaratory relief against Defendants Schmalbach, Mukarurinda, Kunkel, and Fosburg. Plaintiff's personal capacity Eighth Amendment claims for damages against Defendants Schmalbach, Mukarurinda, Kunkel, and Fosburg remain in the case.

## Discussion

### I.   Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which Plaintiff complains, however, occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff sues the following ICF personnel in their official and personal capacities: Registered Nurses Angela Schmalbach, Christian Kunkel, and Unknown Fosburg; Physician's Assistant Leoncie Mukarurinda; and Health Care Unit Manager C. Williams.

Plaintiff states that he arrived at ICF in 2010. (Compl., ECF No. 1, PageID.4.) In 2011, Plaintiff was diagnosed with sleep apnea and hypoxemia. (*Id.*) As a result, Plaintiff was approved for "usage of a continuous positive airway pressure machine" (CPAP). (*Id.*) Plaintiff sets forth that the CPAP machine uses medical distilled water, and that each time he needs a new jug of distilled water, he must "contact the health care services/staff where he resides." (*Id.*)

On November 2, 2023, Plaintiff sent a kite to medical requesting a new jug of medical distilled water, "to no avail." (*Id.*) On November 4, 2023, Plaintiff told the officers in his housing unit that he was out of distilled water and asked them to contact health services. (*Id.*) The officers did so, and Defendant Schmalbach told them that distilled water was issued every three weeks, and that Plaintiff "can use tap water or no water at all for his CPAP machine." (*Id.*, PageID.4–5.) Plaintiff used tap water as instructed, and he received a gallon of medical distilled water on November 7, 2023. (*Id.*, PageID.5.)

On November 19, 2023, around 2:25 a.m., Plaintiff woke up "with a swollen throat, difficult[y] breathing, [and] coughing." (*Id.*) Plaintiff "found green swamp water in his CPAP machine water tray and in the breathing hose." (*Id.*) Plaintiff alleges that his coughing, swollen throat, and difficulty breathing "became frequent without medical distilled water." (*Id.*)

On December 7, 2023, healthcare services contacted Plaintiff to pick up a new gallon of medical distilled water. (*Id.*) While at healthcare services, Plaintiff told Defendant Mukarurinda about the medical issues he had experienced on November 19, 2023. (*Id.*) Plaintiff asked about the use of tap water, and Defendant Mukarurinda responded, "You must be mistaken, you can use tap water as it works all the same." (*Id.*) Plaintiff contends that Defendant Mukarurinda refused to provide any treatment for the medical issues, despite being aware that Plaintiff had been diagnosed with obstructive sleep apnea and nocturnal hypoxemia. (*Id.*,

5

PageID.5–6.) Instead, Defendant Mukarurinda told Plaintiff he could use tap water and that he would not be experiencing problems if he was not overweight. (*Id.*)

Plaintiff claims that ICF "is a pole barn with no proper ventilation." (*Id.*) As such, Plaintiff used more distilled water, especially in the winter months. (*Id.*) On December 14, 2023, Plaintiff sent a kite to Defendant Kunkel asking for more distilled water. (*Id.*) Defendant Kunkel denied Plaintiff's request, so Plaintiff used tap water in his CPAP machine. (*Id.*) Plaintiff sent another kite, and Defendant Schmalbach responded that Plaintiff was to receive one gallon of distilled water every three weeks, and that he could use the CPAP without water. (*Id.*) Plaintiff did not receive more distilled water until December 21, 2023. (*Id.*)

Plaintiff contends that Defendant Williams, as Health Unit Manager, was responsible for ensuring that medical supplies were ordered in a timely fashion. (*Id.*, PageID.7.) Plaintiff contends that distilled water was often out of stock and not ordered. (*Id.*) Plaintiff wrote to the Bureau of Health Care Services "regarding Defendants' refusal to provide timely CPAP supplies for [the] breathing apparatus." (*Id.*)

Plaintiff continued to suffer choking, vomiting, and difficulty breathing "from the buil[d] up of bacteria found in his CPAP f[rom] using tap water." (*Id.*) On December 28, 2023, Defendant saw Defendant Mukarurinda for unrelated medical issues and asked, "Why am I not getting the distilled water every 14 days per MDOC Bureau of Care guidelines, and your staff are issuing my CPAP supplies every 21

6

days?" (*Id.*, PageID.8.)  Defendant Mukarurinda told Plaintiff that he would not be experiencing problems if he was not overweight.  (*Id.*)

On December 30, 2023, Plaintiff suffered "heavy coughing with green mucous [and] pain in his throat." (*Id.*)  Plaintff's CPAP machine shut down as he slept. (*Id.*)  Plaintiff asked non-party Officer Ayotte to notify Defendant Fosburg. (*Id.*)  Officer Ayotte told Plaintiff that Defendant Fosburg refused to see Plaintiff, even though Fosburg was aware of Plaintiff's medical issues.  (*Id.*)

On January 18, 2024, Defendant was at healthcare services to pick up a jug of distilled water. (*Id.*)  He asked Defendant Mukarurinda, "When are you going to order medical test[s] for me?" (*Id.*)  Defendant Mukarurinda told Plaintiff that his medical issues were due to being overweight, and that Plaintiff should come back when he lost weight and staff could order heart, lung, and blood tests. (*Id.*)

On March 7, 2024, Plaintiff contacted the Bureau of Health Care Services, and after the Bureau communicated with Defendants, Plaintiff "finally received timely distilled water . . . and was scheduled for medical tests that weren't ordered in [February] 2024 as [Defendant Mukarurinda] alleged." (*Id.*, PageID.9.)

On May 1, 2024, Defendant Fosburg refused to provide Plaintiff with more distilled water and told Plaintiff to use tap water. (*Id.*)  Plaintiff continued to experience "more respiratory suffering, [including] regurgitating bloody mucus." (*Id.*)

On May 5 and 6, 2024, Plaintiff sent kites to the Health Unit Manager, informing her that he had been without CPAP supplies since April 20, 2024, as his distilled water ran out every 14 days, not every 3 weeks. (*Id.*)  Plaintiff, however,

7

alleges that his kites were to no avail. (*Id.*) On May 8, 2024, Plaintiff "woke up gasping for air, [experiencing] head and chest pain[,] with green mucus on [his] bedding." (*Id.*)

Based upon the foregoing, Plaintiff asserts Eighth Amendment claims for deliberate indifference to serious medical needs. Plaintiff seeks a declaratory judgment, as well as compensatory and punitive damages. (*Id.*, PageID.11–12.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to

8

relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Official Capacity Claims

As noted *supra*, Plaintiff has sued Defendants in their official and personal capacities. Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated

9

Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks declaratory relief, as well as damages. Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1988). Defendants are, therefore, entitled to immunity with respect to Plaintiff's official capacity claims for damages.

However, an official capacity action seeking declaratory and injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as

10

prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Plaintiff's complaint does not allege an ongoing violation of federal law or seek relief properly characterized as prospective. Plaintiff has been transferred from ICF to MCF. The Sixth Circuit has held that transfer to another prison facility moots claims for declaratory and injunctive relief. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Underlying the rule is the premise that such relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Lyons*, 461 U.S. at 102; *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyons*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495–96. Accordingly, Plaintiff cannot maintain any official capacity claims for declaratory relief, and his official capacity claims will be dismissed in their entirety.[2]

---

[2] To the extent Plaintiff seeks declaratory relief against Defendants in their personal capacities, such claims will be dismissed for the same reason as Plaintiff's claims for declaratory relief against Defendants in their official capacities.

B.  **Personal Capacity Claims**

Plaintiff contends that Defendants violated his Eighth Amendment rights by failing to provide adequate medical care for his serious medical needs.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would result in unnecessary suffering without serving any penological purpose. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) "The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency." *Id.* at 103–04. The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

As set forth *supra*, Plaintiff alleges that he has suffered from obstructive sleep apnea and hypoxemia since 2011. Plaintiff has also alleged that when he used tap water in his CPAP machine, he experienced episodes of coughing, difficulty breathing, and a swollen throat. He also had instances where he regurgitated bloody and/or green mucus. Given these allegations, at this stage of the proceedings, the Court concludes that Plaintiff has sufficiently alleged facts regarding a serious medical need.

"To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703 (citing *Farmer,* 511

U.S. at 837). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Rhinehart v. Scutt*, 894 F.3d 721, 750–51 (6th Cir. 2018); *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant

13

to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 448 (6th Cir. 2014) (quoting *Jones v. Muskegon Cnty.*, 625 F.3d 935, 944 (6th Cir. 2010)). Further, "[w]here the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (6th Cir. 1989)).

### 1. Defendants Schmalbach, Mukarurinda, Kunkel, and Fosburg

As set forth *supra*, Plaintiff alleges that on multiple occasions, Defendants Schmalbach, Mukarurinda, Kunkel, and Fosburg refused to give him medical distilled water and told him to use tap water in his CPAP machine. Plaintiff alleges further that when he began to experience coughing, difficulty breathing, a swollen throat, and regurgitating mucus after using tap water in his CPAP, these individuals refused to provide treatment as well as more distilled water, instead telling Plaintiff that he would not have these issues if he were not overweight. Taking Plaintiff's allegations as true, as the Court must at this stage of proceedings, Plaintiff's Eighth Amendment personal capacity claims for damages against Defendants Schmalbach, Mukarurinda, Kunkel, and Fosburg may not be dismissed on initial review.

### 2. Defendant Williams

In his complaint, Plaintiff alleges that Defendant Williams, as Health Unit Manager, was responsible for ensuring that medical supplies for prisoners "are ordered/available in a timely fashion." (Compl., ECF No. 1, PageID.7.) Plaintiff also states that on May 5 and 6, 2024, he sent kites to the Health Unit Manager "informing her that Plaintiff has been without CPAP supplies since 4/20/24 as distilled water is used up every 14 days, not 3 weeks." (*Id.*, PageID.9.) Moreover, Plaintiff's exhibits indicate that Defendant Williams was the reviewer on the Step I response to a grievance that Plaintiff filed on November 29, 2023, regarding the lack of distilled water. (ECF No. 1-1, PageID.17–18.)

Plaintiff's complaint is devoid of facts from which the Court could infer that Defendant Williams was personally involved in Plaintiff's treatment. Although Plaintiff states that he sent two kites to Defendant Williams, his complaint does not allege any facts suggesting that Defendant Williams personally reviewed those kites. Moreover, although Defendant Williams was the reviewer on the Step I response to Plaintiff's grievance, failure to act upon a grievance is insufficient to impose liability under § 1983. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). For these reasons, Plaintiff's Eighth Amendment personal capacity claim against Defendant Williams will be dismissed.

### Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Moreover, having conducted the review required by the PLRA, the Court determines that Defendant Williams will be dismissed for failure to state a claim under 28 U.S.C.

§§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims as well as any personal capacity claims for declaratory relief against Defendants Schmalbach, Mukarurinda, Kunkel, and Fosburg. Plaintiff's personal capacity Eighth Amendment claims for damages against Defendants Schmalbach, Mukarurinda, Kunkel, and Fosburg remain in the case.

 An order consistent with this opinion will be entered.


Dated:  September 16, 2024      /s/ Phillip J. Green
                   PHILLIP J. GREEN
                   United States Magistrate Judge